## Nettie A. Broaddus, Appellee, v. William T. Bruce, Appellant.

### Gen. No. 16,984.

1. MONEY HAD AND RECEIVED—*evidence.* In an action to recover $3,000, a judgment for plaintiff is against the manifest weight of the evidence where the evidence fails to account for the acquirement of that sum by plaintiff and her husband, the testimony is unreasonable as to the manner in which the money was cared for, defendant advanced money to plaintiff for various purposes, plaintiff wrote several letters to defendant without any allusion to the money in question and no fact or circumstance corroborates plaintiff's testimony.

2. EVIDENCE—*when mere preponderance necessary.* It is not incumbent on plaintiff to establish her case beyond a reasonable doubt or by a clear preponderance of the evidence to recover in an action for money alleged to have been given to defendant to invest, but a mere preponderance is necessary.

Appeal from the Muncipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed January 29, 1913.

D. J. NORMOYLE and E. J. KELLEY, for appellant.

CHARLES C. SPENCER, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit instituted in the Municipal Court by Nettie A. Broaddus against William T. Bruce to recover $3,000, alleged to have been given by the plaintiff to defendant for the purpose of being invested on account of plaintiff and wrongfully detained by the defendant. There have been three trials of the case, two of which resulted in verdicts for the plaintiff, which were set aside by the trial court. The third and last trial before the court without a jury resulted in a finding and judgment against defendant for the

amount of plaintiff's claim, to reverse which judgment the defendant prosecutes this appeal.

It is insisted on behalf of appellant that the finding of the court is against the manifest weight of the evidence and that the court erred in refusing to hold as the law of the case certain propositions submitted by appellant.

The propositions submitted to the court were properly refused for two reasons. First, they were not submitted in apt time and second, as formulated, they are neither propositions of law nor propositions of fact, but embody mixed propositions of law and fact for the submission of which there is no warrant.

As the judgment must be reversed and the cause remanded because the finding upon which the judgment is predicated is against the manifest weight of the evidence, it becomes necessary to discuss the evidence.

In 1901 appellee, accompanied by her husband and her son, removed from Lacon or Kewanee in this state to Chicago, and in 1904 or 1905 she met the appellant, who then also resided in Chicago with his wife and family and was employed as superintendent of the Boston Store stables. They had formerly resided at Putnam in this state, where they had known each other in childhood. Following their meeting and the renewal of their former acquaintance, appellant procured the employment of appellee's husband and son as teamsters, and appellee and her family resided for a time in rooms over one of the stables. About that time, or shortly thereafter, the relations between appellee and appellant became illicit and so continued until shortly prior to the commencement of this suit. The husband of appellee died in February, 1908, and on December 8th or 9th following, appellant abandoned his wife and children and accompanied by appellee went to Seattle, Washington, where, immediately upon his arrival, he was arrested upon the charge of wife abandonment and returned in custody to Chicago. Appellant then had upon his person

something over $9,000 in currency, including five $1,000 bills. It is uncontroverted that on December 8, 1908, being the same day or the day preceding that on which appellee and appellant left for Seattle, appellant withdrew in currency from the Illinois Trust and Savings Bank $9,500.

Regarding the transaction, wherein appellee claims to have given $3,000 to appellant, she testified that in the last week of March, 1908, she had that amount of money in three bills of $1,000 each, which she desired to invest in a rooming house; that appellant was going around helping her to find one and she gave him the three $1,000 bills at that time to invest for her; that appellant retained the money until December following, when they went to Seattle where he was to invest that amount for her in a rooming house, and where he proposed to purchase a livery stable. Concerning the source from which said money was derived and the manner in which it had been kept, appellee testified that her husband brought with him $4,000 in four $1,000 bills when he removed to Chicago with her in 1900 or 1901, and that said bills were in the possession of herself or her husband until three or four weeks prior to his death on February 16, 1908, when he gave the bills to her; that during all of that time the four $1,000 bills were kept in the mattress of the bed occupied by her husband and herself, or carried by one or the other of them on his or her person, or taken by her in her trunk when she made trips out west; that during a portion of that time she had an account in the First National Bank of Chicago, but no part of said money was ever deposited there by her. Without reviewing the evidence in detail it is sufficient to say that it wholly fails to account for the acquirement by appellee and her husband of $4,000, prior to their removal to Chicago.

It is uncontroverted that appellant paid the funeral expenses of appellee's husband and also frequently advanced money to appellee for various purposes;

that upon one occasion, in 1905, appellant deposited $1,500 to secure the bail of appellee's son, when he was arrested upon a criminal charge, and that upon several occasions appellee and her husband borrowed money from a loan broker, which they secured by giving chattel mortgages upon their household furniture. Following the termination of the illicit relations which had existed between appellee and appellant, appellee wrote appellant several letters, wherein she charged him with unfaithfulness to her and made reference to her helpless and destitute condition and her inability to meet necessary expenses, in none of which letters does she make any allusion to the money in question or make any claim upon appellant therefor.

Appellant denied that appellee had ever given him $3,000 or any other sum of money to invest for her, or that any portion of the money which he had with him when he accompanied appellee to Seattle belonged to appellee, and the bank account of appellant shows that no deposit of any money was made by him between August 16, 1907, when he deposited $11,000, and December 29, 1908, when he deposited $4,300. The necessary inference from this circumstance, that from April 1, 1908, to December 29, 1908, appellant carried $3,000 in currency on his person, or kept the same elsewhere than in the bank where he carried an account, is as unreasonable as is the testimony of appellee regarding the manner in which she and her husband cared for the four $1,000 bills which she claims they had in their possession from 1900 or 1901 to 1908.

If, notwithstanding the inherent incredibility of the testimony of appellee in the respects mentioned, the record disclosed some fact or circumstance corroborative of her testimony, other than certain alleged admissions by appellant to the effect that $3,000 of the money which he carried with him to Seattle belonged to appellee, we might be reluctant to disturb the finding and judgment of the trial court, but the record is

not only barren of any such fact or circumstance, but every fact and circumstance disclosed by the record is inconsistent with appellee's claim.

The alleged admissions, if made by appellant, were made under circumstances which necessarily detract from their probative value. If the testimony of the witnesses be true, such admissions were made by appellant while the charge of wife abandonment against him was being pressed, and before his reconciliation with his wife and family, and while he was in an irresponsible condition induced by alcoholism and surrounded by those who appear to have had some interest in common in establishing the claim of appellee.

We are unhesitatingly impelled to the conclusion that the finding of the trial court is against the manifest weight of the evidence.

Counsel for appellant insist that it is incumbent upon appellee to establish her case beyond a reasonable doubt, or at least by a clear preponderance of the evidence, but such insistence is without merit, and she will be entitled to a verdict or finding when she shall have proven her case by a preponderance merely of the evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*